**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

DENNIS ROBERTS,

    Plaintiff,

    v.

CRAFT BREW ALLIANCE, INC., DAVID R. LORD,
TIMOTHY P. BOYLE, MARC J. CRAMER,
PAUL D. DAVIS, MATTHEW GILBERTSON,
KEVIN R. KELLY, NICKOLAS A. MILLS, and
JACQUELINE S. WOODWARD,

    Defendants.

___

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND**
___

Plaintiff Dennis Roberts ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Craft Brew Alliance, Inc. ("Craft Brew" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of

1

Craft Brew by Anheuser-Busch Companies, LLC ("Parent") and Barrel Subsidiary, Inc. ("Merger Sub," and together with Parent, "Anheuser-Busch").[1]

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Craft Brew common stock.

7. Defendant Craft Brew brews and sells craft beers and ciders in the United States and internationally. The Company is incorporated in Washington. Certain Craft Brew brands are produced in Fort Collins, Colorado. The Company's common stock trades on the NASDAQ market under the ticker symbol, "BREW."

8. Defendant David R. Lord ("Lord") is the Chairman of the Board of the Company.

---

[1] Merger Sub is a direct wholly owned subsidiary of Parent.

2

9. Defendant Timothy P. Boyle ("Boyle") is a director of the Company.

10. Defendant Marc J. Cramer ("Cramer") is a director of the Company.

11. Defendant Paul D. Davis ("Davis") is a director of the Company.

12. Defendant Matthew Gilbertson ("Gilbertson") is a director of the Company. He serves as Treasurer and Vice President for the North America Zone of Parent.

13. Defendant Kevin R. Kelly ("Kelly") is a director of the Company.

14. Defendant Nickolas A. Mills ("Mills") is a director of the Company. He has served as Vice President of Supply for The High End at Parent.

15. Defendant Jacqueline S. Woodward ("Woodward") is a director of the Company.

16. Defendants Lord, Boyle, Cramer, Davis, Gilbertson, Kelly, Mills, and Woodward are collectively referred to herein as the "Individual Defendants."

17. Defendants Craft Brew and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

18. Parent is a Delaware limited liability company and a wholly owned subsidiary of Anheuser Busch InBev SA/NV. Parent owns and operates 23 breweries, 14 distributorships and 23 agricultural and packaging facilities. Its brands include Budweiser, Bud Light, Michelob ULTRA and Stella Artois. As of November 11, 2019, Parent owned approximately 31.2% of the issued and outstanding share of Craft Brew common stock.

19. Anheuser-Busch InBev SA/NV is a brewing company that engages in the production, distribution, and sale of beer, alcoholic beverages, and soft drinks. Anheuser-Busch InBev SA/NV is incorporated in Belgium and headquartered in Leuven, Belgium. Anheuser-Busch InBev SA/NV's American Depositary Receipts trade on the New York Stock Exchange under the

ticker symbol, "BUD."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. On November 11, 2019, Craft Brew and Anheuser-Busch issued a press release announcing an agreement whereby Anheuser-Busch would purchase the remaining Craft Brew shares it does not already own in a merger transaction for $16.50 per share, in cash. The press release states, in pertinent part:

**Craft Brew Alliance and Anheuser-Busch Announce Expanded Partnership**

*Agreement builds upon successful 25-year relationship*

November 11, 2019 04:46 PM Eastern Standard Time

NEW YORK & PORTLAND, Ore.--(BUSINESS WIRE)--Today, Craft Brew Alliance ("CBA") (Nasdaq: BREW), a Portland-based brewing company that creates world-class craft beers, and Anheuser-Busch ("A-B") jointly announced an agreement to expand their partnership, with A-B agreeing to purchase the remaining CBA shares it does not already own in a merger transaction for $16.50 per share, in cash.

\* \* \*

The vast majority of CBA's brands are already distributed through A-B's network of independent wholesalers per the companies' existing commercial agreement.

\* \* \*

A-B currently owns a 31.2 percent stake in CBA and has offered $16.50 in cash for the remaining shares.

The transaction is subject to customary closing conditions, including approval by a majority of CBA's shareholders not affiliated with A-B and certain regulatory approvals. The transaction is expected to close in 2020.

**ABOUT CRAFT BREW ALLIANCE**

Craft Brew Alliance (CBA) is a leading craft brewing company that brews, brands, and brings to market world-class American craft beers.

> Our distinctive portfolio combines the power of Kona Brewing Company, a dynamic, fast-growing national craft beer brand, with strong regional breweries and innovative lifestyle brands: Appalachian Mountain Brewery, Cisco Brewers, Omission Brewing Co., Redhook Brewery, Square Mile Cider Co., Widmer Brothers Brewing, and Wynwood Brewing Co. CBA nurtures the growth and development of its brands in today's increasingly competitive beer market through our state-of-the-art brewing and distribution capability, integrated sales and marketing infrastructure, and strong focus on innovation, partnerships, and local community.
>
> Formed in 2008, CBA is headquartered in Portland, Oregon and operates breweries and brewpubs across the U.S. CBA beers are available in all 50 U.S. states and 30 different countries around the world. For more information about CBA and our brands, please visit www.craftbrew.com.
>
> **ABOUT ANHEUSER-BUSCH**
>
> For more than 165 years, Anheuser-Busch has carried on a legacy of brewing great-tasting, high-quality beers that have satisfied beer drinkers for generations. Today, we own and operate 23 breweries, 14 distributorships, and 23 agricultural and packaging facilities, and have more than 18,000 colleagues across the United States. We are home to several of America's most recognizable beer brands, including Budweiser, Bud Light, Michelob ULTRA and Stella Artois, as well as a number of regional brands that provide beer drinkers with a choice of the best-tasting craft beers in the industry.

21. On January 21, 2020, Defendants filed with the SEC a Schedule 14A Definitive Proxy Statement pursuant to Section 14(a) of the Exchange Act (the "Proxy Statement") in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

22. The Proxy Statement, which recommends that Craft Brew shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Craft Brew's financial projections; (ii) the financial analyses performed by Craft Brew's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in connection with its fairness opinion; (iii) the sales process leading up to the Proposed Transaction; and (iv) potential conflicts of interest involving Company insiders.

5

23. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Reasons for the Merger; Recommendation of the Board; Fairness of the Merger; (iii) Opinion of Goldman Sachs & Co. LLC; and (iv) and CBA [Craft Brew] Management Projections.

24. Plaintiff may seek to enjoin the February 25, 2020 shareholder vote on the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. Unless remedied, Craft Brew shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff seeks to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Craft Brew's Financial Projections

25. The Proxy Statement omits material information concerning Craft Brew's financial projections.

26. The Proxy Statement provides that:

[I]n connection with its evaluation of a potential transaction, CBA's management has independently prepared certain unaudited prospective financial information for fiscal years 2019-2024 (which we refer to as the "projections"). These projections were made available to the Board and the Committee in connection with their consideration and evaluation of the transaction and to CBA's financial advisor in connection with its financial analyses and opinion.

27. The Proxy Statement sets forth a table of "prospective financial information based on the information contained in the Company's long-range plan, which had been prepared by the Company's management for review by the Board" (the "Craft Brew Projections").

28. The Proxy Statement, however, fails to disclose the following concerning the Craft Brew Projections: (1) all line items used to calculate (i) EBITDA, and (ii) Unlevered Free Cash Flows; and (2) a reconciliation of all non-GAAP to GAAP metrics.

29. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[2]

30. The disclosure of Craft Brew's projected financial information is material because it would provide Craft Brew shareholders with a basis to project Craft Brew's future financial performance and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Craft Brew and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31. Accordingly, in order to cure the materially misleading nature of the Craft Brew Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Feb. 10, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

32. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Craft Brew shareholders.

### 2. Material Omissions Concerning Goldman Sachs' Financial Analyses

33. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman Sachs.

34. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 6.0% to 7.0%, and (ii) perpetuity growth rates ranging from 2.0% to 2.5%; (2) all line items used to calculate the unlevered free cash flows to be generated by Craft Brew for the period from January 1, 2020 to December 31, 2024; (3) the range of illustrative terminal values for Craft Brew as of December 31, 2024; (4) the estimate of the terminal year unlevered free cash flow of Craft Brew; (5) the estimated terminal year Adjusted EBITDA; (6) the Company's net debt as of October 31, 2019; and (7) the total number of fully diluted Craft Brew common stock outstanding as of November 8, 2019.

35. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the (i) range of illustrative multiples of enterprise value to Adjusted EBITDA for the next 12-month period ("NTM EBITDA") of 10.5x to 14.5x; and (ii) discount rate of 7.0%; (2) Craft Brew's NTM EBITDA for each of years 2019, 2020 and 2021; (3) the range of theoretical future values per share of Craft Brew common stock as of December 31 of each of 2019, 2020 and 2021; (4) the Company's net debt as of December 31 of each of 2019, 2020 and

2021; and (5) the total number of estimated, fully-diluted Craft Brew common stock outstanding as of December 31 of each of 2019, 2020 and 2021.

36. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Selected Precedent Transactions Analysis*": (1) the individual financial metrics of each of the selected companies utilized by Goldman Sachs in its analysis; (2) the Company's net debt as of October 31, 2019; and (3) the total number of fully diluted Craft Brew common stock outstanding as of November 8, 2019.

37. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Premia Paid Analysis*": (1) the transactions utilized by Goldman Sachs in its analysis; and (2) the individual premiums paid in each of the transactions.

38. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to Craft Brew shareholders. The description of Goldman Sachs' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Craft Brew shareholders are unable to fully understand Goldman Sachs' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Craft Brew shareholders.

### 3. Material Omissions Concerning the Sales Process Leading to the Proposed Transaction

39. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

40. The Proxy Statement provides that, "[i]n 2016, CBA explored a number of strategic

alternatives including a potential merger or sale of the entire company, both with A-B [(Anheuser-Busch Companies, LLC)] and with third parties," but fails to disclose the nature of the "strategic alternatives" explored by Craft Brew.

41. The Proxy Statement provides that, on September 24, 2019, in response to "A-B representatives['] belie[f] that an appropriate valuation for CBA would be $15 in cash per share of CBA common stock," Craft Brew representatives "indicated [] that they did not believe that the Committee would view the $15 per share price indicated by A-B as sufficient, and discussed some reasons and bases for a higher valuation."[3] Following this meeting, Craft Brew's management team "updated, and received guidance from, three members of the Committee, including the chairman."

42. Similarly, in a subsequent meeting between Craft Brew and Anheuser-Busch representatives that was held on September 26, 2019, Craft Brew's Chief Executive Officer Andrew J. Thomas "reiterated that CBA continued to view a price of $15 in cash per share as insufficient for CBA shareholders, discussed some reasons and bases for a higher valuation, and indicated that a price of at least $18 per share would likely be a value that CBA's senior management team would be prepared to recommend to the Committee."

43. Thereafter, on October, 4, 2019, "it was the consensus of the Committee that a proposal in the range being indicated by A-B could potentially be highly attractive to CBA and its shareholders relative to the alternative of remaining independent and continuing to execute on its business plan with no change to its relationship with A-B and relative to CBA's other strategic

---

[3] The Board formed the "Committee," a special committee of directors purportedly comprising all of Craft Brew's directors who were independent and not affiliated with Anheuser-Busch, to evaluate Craft Brew's "alternatives with respect to its commercial and strategic relationships with A-B and to consider the proposed merger transaction."

alternatives[.]"

44. On November 8, 2019, "A-B representatives communicated A-B's proposal to acquire all of the outstanding shares of CBA common stock not already owned by A-B in a merger transaction at a price of $16.50 in cash per share[.]"

45. The Proxy Statement, however, fails to disclose: (1) the underlying basis and rationale for Craft Brew's purportedly higher valuation of the Company that was discussed during the September 24 and September 26, 2019 meetings; (2) the other strategic alternatives considered by Craft Brew; and (3) the content and timeline of the Committee's discussions and reasons which led to its consensus conclusion on October 4, 2019 "that a proposal in the range being indicated by A-B could potentially be highly attractive to CBA and its shareholders[,]" particularly since about one week earlier Craft Brew representatives indicated to Anheuser-Busch representatives that the Committee would likely find an offer of $15 per share to be insufficient and that CBA's senior management team would likely recommend to the Committee a price of at least $18 per share.

46. This omitted information, if disclosed, would significantly alter the total mix of information available to Craft Brew shareholders

**4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

47. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

48. The Proxy Statement provides that "[t]hroughout the month of October [2019], representatives of CBA and A-B met periodically to discuss communications plans and human resources matters."

49. The Proxy Statement, however, fails to disclose the specific details of all

employment, retention, and compensation related discussions and negotiations (*i.e.*, human resources matters) concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

50. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

51. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Craft Brew shareholders.

### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

52. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

54. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed

Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

55. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

56. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

57. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

58. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of certain Individual Defendants to approve the Proposed Transaction. Thus, those Individual Defendants were directly involved in the making of the Proxy Statement.

62. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's

shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 10, 2020                             Respectfully submitted,

**HALPER SADEH LLP**

/s/ Daniel Sadeh
Daniel Sadeh, Esq.
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*